# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: ANTI-VIBRATIONAL RUBBER PARTS | 2:13-cv-00801-MOB-MKM<br>2:16-cv-14057-MOB-MKM |
| JERRY A. ANDERSON, SR.; LAURA L. LARUE; *and* CHRISTOPHER A. LEE, *on behalf of themselves and others similarly situated*,<br>                Plaintiffs<br><br>v.<br><br>BRIDGESTONE CORPORATION; BRIDGESTONE APM COMPANY; YAMASHITA RUBBER CO., LTD.; YUSA CORPORATION, SUMITOMO RIKO COMPANY, LTD; DTR INDUSTRIES, INC.; TOYO TIRE & RUBBER CO. LTD, TOYO TIRE NORTH AMERICA OE SALES LLC; *and* TOYO AUTOMOTIVE PARTS (USA), INC.,<br>                Defendants | **Oral Argument Requested** |

## DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6) AND DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(f) AND 23(d)(1)(D)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Bridgestone APM Company, YUSA Corporation, DTR Industries, Inc., Toyo Tire North America OE Sales LLC, and Toyo Automotive Parts (USA), Inc. collectively move to dismiss the complaint filed by Plaintiffs Jerry A. Anderson, Sr., Laura L. LaRue, and Christopher A. Lee. Defendants also move to strike the class allegations in the complaint pursuant to Federal Rule of Civil Procedure 12(f) and 23(d)(1)(D).

Defendants rely on the attached Memorandum of Law and attached exhibits in support of their motion. As required by Local Rule 7.1(a), counsel for Defendants met and conferred with counsel for Plaintiffs on April 11, 2017. The parties were unable to reach agreement regarding the relief sought in this motion.

Respectfully submitted

April 14, 2017

*/s/ Steven A. Reiss*

Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
Kaj Rozga
David Fitzmaurice
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com
kajetan.rozga@weil.com
david.fitzmaurice@weil.com

Frederick R. Juckniess

**JUCKNIESS LAW FIRM PLC**
302 E. Liberty Street, Ste. 203
Ann Arbor, MI  48104
Telephone: (734) 707-1515
Rick@Juckniesslaw.com

*Counsel for Bridgestone APM Company*


*/s/ David C. Giardina* (with consent)
David C. Giardina
Courtney A. Hoffmann
Kevin Fee
**SIDLEY AUSTIN LLP**
One S. Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
dgiardina@sidley.com
choffmann@sidley.com
kfee@sidley.com

Bradley J. Schram
**HERTZ SCHRAM PC**
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
Telephone: (248) 335-5000
Facsimile: (248) 335-3346
bschram@hertzschram.com

*Counsel for Toyo Automotive Parts (USA),
Inc., and Toyo Tire North America OE Sales
LLC*


*/s/ Michael A. Rubin*   (with consent)
James L. Cooper
Michael A. Rubin
Adam Pergament
Matthew Oster
**ARNOLD & PORTER KAYE
SCHOLER LLP**
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone:  (202) 942-5000

james.cooper@apks.com
michael.rubin@apks.com
adam.pergament@apks.com
matthew.oster@apks.com

Fred K. Herrmann (P49519)
Joanne G. Swanson (33594)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for YUSA Corporation*

*/s/ J. Clayton Everett* (with consent)
J. Clayton Everett , Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
jeverett@morganlewis.com

*Counsel for  DTR Industries, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311<br>: Honorable Marianne O. Battani<br>: |
| In Re: ANTI-VIBRATIONAL RUBBER PARTS | : 2:13-cv-00801-MOB-MKM<br>: 2:16-cv-14057-MOB-MKM<br>: |
| JERRY A. ANDERSON, SR.; LAURA L. LARUE; *and* CHRISTOPHER A. LEE, *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs<br><br>v.<br><br>BRIDGESTONE CORPORATION; BRIDGESTONE APM COMPANY; YAMASHITA RUBBER CO., LTD.; YUSA CORPORATION, SUMITOMO RIKO COMPANY, LTD; DTR INDUSTRIES, INC.; TOYO TIRE & RUBBER CO. LTD, TOYO TIRE NORTH AMERICA OE SALES LLC; *and* TOYO AUTOMOTIVE PARTS (USA), INC.,<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: **Oral Argument Requested**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6) AND DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(f) AND 23(d)(1)(D)**

## STATEMENT OF THE ISSUES

1.  Under Article III, Plaintiffs cannot rely on a "speculative chain of possibilities" between their alleged injury and Defendants' alleged conduct to establish standing. Yet here, Plaintiffs fail to show they purchased AVRPs made by Defendants — indeed, Defendants don't even sell AVRPs to individual consumers. Because Plaintiffs' injuries are purely speculative, should the Court dismiss Plaintiffs' complaint for lack of standing under Rule 12(b)(1)?

    **Answer**: Yes

2.  Under *Illinois Brick*, only direct purchasers can bring damages claims under the Sherman Act. If Plaintiffs did somehow purchase AVRPs made by Defendants, they necessarily purchased them indirectly through unidentified third parties because Defendants do not sell AVRPs directly to any retail entities under their control or to any retail consumers. Should the Court dismiss these indirect purchaser claims under Rule 12(b)(6) — or, under Rule 12(d), should the Court grant summary judgment based on the existing factual record?

    **Answer**: Yes

3.  Under Rule 23(a), the class representatives' claims must be typical of the proposed class and the class representatives must fairly and adequately protect the interests of the class. Here, not only are Plaintiffs' claims nothing like the claims of other direct purchasers, but the proposed class contains two antagonistic groups of purchasers competing to show injury. Should the Court strike these plainly insufficient class allegations?

    **Answer**: Yes

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................7

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)..........................................................................................5

*Ill. Brick Co. v. Illinois*,
   431 U.S. 720 (1977)...................................................................................... *passim*

*Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*,
   628 F.2d 971 (6th Cir. 1980) .............................................................................5, 8

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
   78 F.3d 1125 (6th Cir. 1996) ................................................................................5

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 5, 12

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 7, 9, 12

Fed. R. Civ. P. 12(d) ....................................................................................1, 9, 10, 12

Fed. R. Civ. P. 12(f)...........................................................................................10, 12

## **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES .................................................................................. ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................. iii

TABLE OF AUTHORITIES ......................................................................................v

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ......................................................................................................2

PREVIOUSLY UNCITED AUTHORITY ................................................................5

ARGUMENT ...........................................................................................................5

I.      The Complaint Must Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Lack
        Constitutional Standing ...............................................................................5

II.     The Complaint Must Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Lack
        Antitrust Standing Under *Illinois Brick* .....................................................7

III.    Defendants Are Entitled To Summary Judgment Under Rule 12(d) Because
        Plaintiffs Lack Antitrust Standing Under *Illinois Brick* .............................9

IV.     Even If The Court Does Not Dismiss Plaintiffs' Individual Claims, It Should
        Strike Plaintiffs' Class Allegations .............................................................10

CONCLUSION .......................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armour v. Brewer*,
No. 16 Civ. 10937, 2016 WL 1259113 (E.D. Mich. Mar. 31, 2016)........................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................7, 8

*In re Auto Parts Antitrust Litig.*,
No. 12 Civ. 101, 2013 WL 2456584 (E.D. Mich. June 6, 2013)..............................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................7

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013)......................................................................................................5

*DLX, Inc. v. Kentucky*,
381 F.3d 511 (6th Cir. 2004)............................................................................................5

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982).......................................................................................................12

*Gizoni v. Affinity Human Res.*,
No. 16 Civ. 10495, 2016 WL 6683568 (E.D. Mich. Nov. 3, 2016)..........................................7

*Harvard Drug Grp., LLC v. Twin City Fire Ins. Co.*,
No. 11 Civ. 10066, 2011 WL 3426193 (E.D. Mich. Aug. 5, 2011)......................................10

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977)................................................................................................ *passim*

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007)............................................................................................12

*Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*,
628 F.2d 971 (6th Cir. 1980).........................................................................................5, 8

*Kardules v. City of Columbus*,
95 F.3d 1335 (6th Cir. 1996)............................................................................................7

*NicSand, Inc. v. 3M Co.*,
507 F.3d 442 (6th Cir. 2007)............................................................................................7

*In re Refrigerant Compressors Antitrust Litig.*,
   No. 09 MD 2042, 2016 WL 6138600 (E.D. Mich. Oct. 21, 2016)......................................8, 9

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
   78 F.3d 1125 (6th Cir. 1996) ...................................................................................5

*Serrano v. Cintas Corp.*,
   No. 04 Civ. 40132, 2009 WL 910702 (E.D. Mich. Mar. 31, 2009),
   *aff'd sub nom. Davis v. Cintas*, 717 F.3d 476 (6th Cir. 2013) ...............................11

*Seven Bros. Painting, Inc. v. Painters & Allied Trades Dist. Council*,
   No. 09 Civ. 12506, 2011 WL 2413407 (E.D. Mich. June 10, 2011).......................10

*Skidmore v. Access Grp., Inc.*,
   149 F. Supp. 3d 807, 809 (E.D. Mich. 2015)...........................................................5

*Stalley v. Methodist Healthcare*,
   517 F.3d 911 (6th Cir. 2008) ...................................................................................5

*White v. United States*,
   601 F.3d 545 (6th Cir. 2010) ...................................................................................7

## Other Authorities

Fed. R. Civ. P. 12(b)(1)........................................................................................1, 5, 12

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 7, 9, 12

Fed. R. Civ. P. 12(d) ........................................................................................1, 9, 10, 12

Fed. R. Civ. P. 12(f) ...............................................................................................10, 12

Fed. R. Civ. P. 23(a) .................................................................................................10

Fed. R. Civ. P. 23(d)(1)(D)........................................................................................10, 12

## PRELIMINARY STATEMENT

Plaintiffs are three individuals who filed a putative "direct purchaser" complaint in the *AVRP* case. These individuals claim that by purchasing stand-alone AVRPs from unidentified entities they were injured because of Defendants' alleged conduct. But Plaintiffs have failed to demonstrate both constitutional standing and antitrust standing.

Plaintiffs have failed to demonstrate ***constitutional standing*** because they do not allege they purchased parts made by Defendants and, therefore, do not adequately allege they were injured by Defendants. This omission is not merely a pleading deficiency. When the Court considers the facts — as it must when standing is challenged — Plaintiffs' inability to show any non-speculative injury becomes clear because: (1) Defendants do not sell AVRPs to individuals; and (2) the repair shops that do sell AVRPs to individuals sell AVRPs made by many companies, not just Defendants. Since constitutional standing cannot be based on a "speculative chain of possibilities," Plaintiffs' complaint must be dismissed under Rule 12(b)(1).

Plaintiffs have also failed to demonstrate ***antitrust standing*** because they admit they did not purchase AVRPs directly from Defendants. Based on the face of their complaint, therefore, Plaintiffs' claims are barred by *Illinois Brick*, and the complaint should be dismissed under Rule 12(b)(6). Alternatively, the Court should consider the existing factual record under Rule 12(d) and grant summary judgment based on the following facts:

- Defendants sell AVRPs to certain OEMs and their suppliers under complex RFQ processes. These are Defendants' only customers, and Defendants are not involved in any subsequent AVRP sales.

- The OEMs and their suppliers subsequently resell these AVRPs to their dealership franchises. These dealership franchises subsequently resell them to retail entities or repair shops.

- Retail entities or repair shops subsequently resell these AVRPs — as replacement parts — directly to individual consumers, such as Plaintiffs.

At bottom, this complaint is a blatant tactic to toll the statute of limitations using baseless claims. This complaint was filed **one day** before the four-year limitation period expired, using placeholder plaintiffs who plainly lack both constitutional standing and antitrust standing. And even though Plaintiffs purport to represent all direct purchasers, their purchases of stand-alone AVRPs from repair shops in no way resemble the claims of other proposed "direct purchaser" class members — like Toyota or Nissan — who purchase tens of millions of AVRPs directly from Defendants during the vehicle manufacturing process. Instead, Plaintiffs' purchases of stand-alone AVRPs are simply consumer purchases of "replacement parts" — purchases that were once part of the "indirect purchaser" actions in this case.

## BACKGROUND

The *AVRP* case has been on the Court's docket since March 2013. It was initiated by two groups of indirect purchasers — Auto Dealers and End Payors — who sued these same Defendants for allegedly fixing the prices of AVRPs that were installed in the vehicles they purchased.[1] A three-year discovery process in the *AVRP* case is almost complete, making it the first indirect purchaser case to finish party discovery in the *Auto Parts* consolidated action.

But one day before the four-year antitrust limitation period expired, a new group of three plaintiffs filed this supposed "direct purchaser" complaint in a transparent attempt to toll the statute of limitations. Like the End Payors, these Plaintiffs are also individual consumers, marking the first time in any *Auto Parts* case that individual consumers, rather than corporate entities, filed a direct purchaser action. *See* Compl. ¶¶ 11–13. Unlike the End Payors, however,

---

[1] *See In re Automotive Parts Antitrust Litig.*, No 13 Civ. 802, ECF No. 28, (E.D. Mich. June 21, 2014) ("ADP Compl."); *In re Automotive Parts Antitrust Litig.*, No 13 Civ. 803, ECF No. 195, (E.D. Mich. Mar. 29, 2017) ("EPP Am. Compl."). The Court can take judicial notice of these indirect purchaser pleadings. *See Armour v. Brewer*, No. 16 Civ. 10937, 2016 WL 1259113, at *1 (E.D. Mich. Mar. 31, 2016) (permitting judicial notice of publically available court filings).

2

these Plaintiffs allegedly purchased stand-alone AVRPs, rather than new vehicles. *Id.*

Plaintiffs' pleadings copy the core allegations from the indirect purchaser pleadings, sometimes repeating the allegations verbatim. Indeed, just like the indirect purchaser complaints, Plaintiffs' complaint focuses on Defendants' alleged actions in Japan, the AVRP manufacturing process, and the vehicle manufacturing process.[2] But there is one major difference in the complaints. The indirect purchasers allege a link between these alleged actions and their alleged injury: they claim the alleged conduct increased the prices of Defendants' AVRPs; the OEMs purchased Defendants' AVRPs at higher prices; the OEMs put Defendants' AVRPs into the cars that they manufactured; and the Auto Dealers and End Payors purchased cars containing Defendants' AVRPs. By contrast, the complaint here fails to allege ***any*** facts about how Plaintiffs' purchased these stand-alone AVRPs:

- Plaintiffs fail to identify the entities that made these AVRPs — forcing the Court to speculate about whether these parts were even made by Defendants.

- Plaintiffs fail to identify the entities that sold them these AVRPs — indeed, Plaintiffs allege no details whatsoever about their transactions.

- Plaintiffs fail to allege how the entities that sold them these AVRPs acquired the AVRPs — instead, they describe how the OEMs acquire AVRPs. *See* Compl. ¶¶ 31–34, 54–58, 60–62.[3]

---

[2] *Compare* Compl. ¶¶ 1–3 *with* ADP Compl. ¶¶ 1–7 *and* EPP Am. Compl. ¶¶ 1–10 (overlapping allegations about the "nature of the case"); *Compare* Compl. ¶¶ 14–15, 17–27 *with* ADP Compl. ¶¶ 122–140 *and* EPP Am. Compl. ¶¶ 74–90 (overlapping allegations about the identity of Defendants); *Compare* Compl. ¶¶ 31–34, 36 *with* ADP Compl. ¶¶ 141–149 *and* EPP Am. Compl. ¶¶ 91–95 (overlapping allegations about the AVRP manufacturing process); *Compare* Compl. ¶¶ 39–42 *with* ADP Compl. ¶¶ 151–52, 155–56 *and* EPP Am. Compl. ¶¶ 97–103 (overlapping allegations about the AVRP market); *Compare* Compl. ¶¶ 44–47, 66–72, 74–75 *with* ADP Compl. ¶¶ 161, 166, 176–195, 200–02 *and* EPP Am. Compl. ¶¶ 110–11, 118–32 (overlapping allegations about participation in the conspiracy and the DOJ investigation).

[3] Plaintiffs' willingness to describe the OEMs' purchasing process rather than their own actual purchasing process is telling. Indeed, if Plaintiffs were true "direct purchasers," the sale of AVRPs from Defendants to the OEMs would be irrelevant to their claims.

Instead of alleging any facts about their AVRP purchases, Plaintiffs try to connect their purchases to Defendants' alleged conduct by asserting that they purchased these AVRPs "directly from an entity of which one of the Defendants is the ultimate parent." Compl. ¶¶ 11–13. Plaintiffs further claim these mystery entities are "agents" of Defendants and carried out their activities under the "management" or "direction" of Defendants. Compl. ¶¶ 16, 25. Plaintiffs even incorporate these legal conclusions into their proposed class definition:

> All direct purchasers of Anti-Vibration Rubber Parts (excluding Defendants and their past and present parents, subsidiaries, affiliates and joint-ventures) in the United States from any of the Defendants (or their controlled subsidiaries, affiliates, joint-ventures, *or entities of which they are the ultimate parent*) during the Class Period.

Compl. ¶ 76 (emphasis added).

The addition of "entities of which [Defendants] are the ultimate parent" to a direct purchaser class definition is unprecedented in the *Auto Part*s case. This addition extends the proposed class definition to include individual consumers who purchased stand-alone AVRPs that were "installed in motor vehicles to replace worn out, defective, or damaged Anti-Vibration Rubber Parts." Compl. ¶ 31. The indirect purchaser plaintiffs initially had similar claims covering purchases of AVRPs as replacement parts[4] — *e.g.*, dealerships which purchased Defendants' AVRPs from the OEMs for use during repairs, and individuals who purchased Defendants' AVRPs from repair shops — but dropped these types of indirect purchaser claims from their complaints almost two years ago.

---

[4] *See* ADP Compl. ¶ 149 ("[W]hen repairing a damaged vehicle or where the vehicle's Anti-Vibration Rubber Parts are defective, Plaintiffs and other automobile dealers indirectly purchase replacement Anti-Vibration Rubber Parts from Defendants."); EPP Am. Compl. ¶ 96 ("An owner of a vehicle may also indirectly purchase for replacement one or more Anti-Vibration Rubber Part(s) from the Defendants when repairing a damaged vehicle or where one or more of the vehicle's Anti-Vibration Rubber Part(s) are defective.").

## PREVIOUSLY UNCITED AUTHORITY

Plaintiffs allege they purchased parts from an indirect subsidiary of an unidentified Defendant, rather than from any Defendant itself. As such, their indirect purchaser claims are barred by *Illinois Brick* unless the "control" exception to *Illinois Brick* applies. Neither the control exception, nor the only Sixth Circuit case on point, *Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*, 628 F.2d 971 (6th Cir. 1980), have been previously cited to the Court — since this is the first time in the *Auto Parts* case that Plaintiffs have based their claims on purchases from subsidiaries. *Jewish Hospital* makes clear, however, that the control exception would not apply here because this "narrow" exception is limited to circumstances where "there effectively has been only one sale." *Id.* at 975.

## ARGUMENT

### I.     The Complaint Must Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Lack Constitutional Standing

If Plaintiffs fail to demonstrate constitutional standing, the Court lacks subject-matter jurisdiction and must dismiss the case under Rule 12(b)(1). *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). In a factual challenge to subject-matter jurisdiction, "***no presumptive truthfulness attaches to plaintiff's allegations***." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citation omitted); *see Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 (E.D. Mich. 2015) (Rule 12(b)(1) motions "may be premised on a facial attack or a factual attack."). Instead, the "trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

To establish constitutional standing, Plaintiffs must prove that any injury is not simply based on a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138,

1150 (2013). Yet here, Plaintiffs do not even allege they purchased parts made by Defendants, making any injury entirely speculative. And the factual record — developed through sworn declarations — further highlights just how speculative Plaintiffs' claims are.

Defendants do not sell stand-alone AVRPs to retail stores, repair shops, or individual consumers like these Plaintiffs. *See* Ex. A at ¶¶ 7–9 (Ohira Decl.); Ex. B. at ¶¶ 6–7 (Bagheri Decl.); Ex. C at ¶¶ 5, 7 (Saki Decl.); Ex. D at ¶¶ 8–9 (Nunn Decl.). Only one Defendant is in any way connected to a retail entity that could have sold to Plaintiffs: Bridgestone Corporation is the indirect owner, through several levels of corporate ownership, of certain Firestone repair shops that sell auto parts to individual consumers. *See* Ex. E at ¶ 5 (Schuster Decl.); *see also* Ex. A at ¶¶ 10–11 (Ohira Decl.); Ex. B. at ¶¶ 9–10 (Bagheri Decl.); Ex. C at ¶¶ 6, 8 (Saki Decl.); Ex. D at ¶¶ 10–11 (Nunn Decl.).

Firestone stores do not sell AVRPs over-the-counter. Instead, individual consumers can only purchase AVRPs as replacement parts when they are installed in their vehicles during repairs. *See* Ex. E at ¶ 6 (Schuster Decl.). Crucially, Firestone stores do not purchase these AVRPs from Bridgestone Corporation or from any other Defendant — instead, they purchase these AVRPs from car dealerships or auto parts distributors. *Id.* As such, Firestone stores sell AVRPs made by many different auto part suppliers — not just those made by Defendants. *Id.* at ¶ 7. And based on the transaction itself, it is not possible to know what entity made a particular AVRP:

> Firestone stores do not know what entity manufactured any particular Anti-Vibration Rubber Part that it purchases and installs in a retail consumer's vehicle because the parts do not identify the manufacturer. The only way to find out which manufacturer made a given Anti-Vibration Rubber Part would be to trace it throughout the various entities in the manufacturing chain.

*Id.* at ¶ 8.

Based on these facts, the Court cannot assume Plaintiffs' AVRPs were made by Defendants simply because Plaintiffs may have bought them in a Firestone store. And forcing the Court to speculate about this threshold issue is not enough to demonstrate constitutional standing. *See White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010) (no standing where the causal link was "overly speculative"); *Kardules v. City of Columbus*, 95 F.3d 1335, 1355 (6th Cir. 1996) (no standing where "the speculative nature of [the allegations] precludes Appellants from establishing a causal nexus.").[5]

## II.   The Complaint Must Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Lack Antitrust Standing Under *Illinois Brick*

Even if Plaintiffs demonstrate that they have constitutional standing, they must also show that they have antitrust standing. Otherwise, the Court must dismiss their claims under Rule 12(b)(6). *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) ("[A]ntitrust standing and Article III standing are not one and the same, and we not only may — but we must — reject claims under Rule 12(b)(6) when antitrust standing is missing."). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept well-pled factual allegations as true, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" and "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

---

[5] Affording Plaintiffs limited jurisdictional discovery would not change the outcome here. Even if such discovery revealed that Plaintiffs' parts were made by a Defendant, the discovery would also confirm that Plaintiffs indirectly purchased these parts and therefore lack antitrust standing, as discussed below. *See Gizoni v. Affinity Human Res.*, No. 16 Civ. 10495, 2016 WL 6683568, at *2 (E.D. Mich. Nov. 3, 2016) (denying a plaintiff's request for jurisdictional discovery because it was "not likely to produce the facts needed to withstand the motion to dismiss").

Plaintiffs lack antitrust standing here because nowhere in their complaint do they allege any facts showing they purchased their AVRPs directly from any named Defendant. *See Ill. Brick Co. v. Illinois*, 431 U.S. 720, 740 (1977). To the contrary, the complaint actually concedes that these AVRPs were purchased "directly" from entities ***other*** than the named Defendants. *See* Compl. ¶¶ 11–13. As such, this complaint stands in stark contrast to every other direct purchaser complaint filed in the *Auto Parts* case.[6] Based on the face of the complaint, therefore, Plaintiffs are indirect purchasers and lack antitrust standing under *Illinois Brick*.

Plaintiffs try to cure this defect by suggesting that the entities from which they purchased their AVRPs were ultimately "controlled" by the named Defendants. The validity of Plaintiffs' direct purchaser claims, therefore, appears to hinge on the "control" exception to *Illinois Brick* — a "narrow" exception under which a purchase from a subsidiary would qualify as a purchase from a parent if the parent's control created "such functional economic or other unity . . . that there has effectively only been one sale." *Jewish Hosp.*, 628 F.2d at 975. But the standard for applying the control exception is very high, and the Sixth Circuit has never permitted an indirect purchaser claim to proceed under the control exception. *In re Refrigerant Compressors Antitrust Litig.*, No. 09 MD 2042, 2016 WL 6138600, at *9 (E.D. Mich. Oct. 21, 2016). Even more critically, Plaintiffs ***plead absolutely no facts*** supporting the application of the control exception — indeed, Plaintiffs fail to even identify the subsidiary in question (or even the name of the store), let alone connect this mystery entity to any named Defendant. Instead, Plaintiffs rely solely on pure legal assertions of "control" and "agency," which — in addition to being impermissible at the pleading stage under *Iqbal* — fall significantly short of alleging actual facts

---

[6] *See, e.g.*, *In re Auto Parts Antitrust Litig.*, No. 12 Civ. 101, 2013 WL 2456584, at *9 (E.D. Mich. June 6, 2013) (denying *Wire Harness* defendants' motion to dismiss the direct purchaser complaint because the complaint "contain[ed] allegations that each [direct purchaser] purchased Wire Harness Products directly from one or more of the Defendants during the Class Period").

necessary to trigger the control exception. *See In re Refrigerant Compressors*, 2016 WL 6138600, at *9 (factual allegations in a complaint about the parent's ownership share, board representation, veto rights, and role in price negotiations were still not enough to trigger the control exception).

Because Plaintiffs have failed to state a direct purchaser claim under the Sherman Act, their complaint should be dismissed under Rule 12(b)(6).

### III. Defendants Are Entitled To Summary Judgment Under Rule 12(d) Because Plaintiffs Lack Antitrust Standing Under *Illinois Brick*

Plaintiffs' failure to allege sufficient facts showing they are direct purchasers is unsurprising because, as a factual matter, no direct purchase was possible. The facts demonstrate that Defendants sell AVRPs directly to certain OEMs and their suppliers under complicated RFQ processes and complex contractual agreements. *See* Ex. A at ¶ 5 (Ohira Decl.); Ex. B. at ¶¶ 5, 8 (Bagheri Decl.); Ex. C at ¶¶ 4, 7 (Saki Decl.); Ex. D at ¶ 7 (Nunn Decl.). Having made this direct sale to the OEMs and their suppliers, Defendants have absolutely no involvement in, knowledge of, or control over any subsequent AVRP sale. *See* Ex. A at ¶ 5 (Ohira Decl.).

Upon directly purchasing AVRPs from Defendants, the OEMs can either install these AVRPs into the vehicles they manufacture, or sell them as stand-alone parts to their dealership franchises (at a markup). *See id.* at ¶ 6. The dealerships can then sell these AVRPs to auto parts distributors (also at a markup). *Id.* At the end of the chain are repair shops, which may either purchase these AVRPs directly from an auto parts distributor or from a dealership. *Id.* Indeed, Firestone — the only retail entity in any way associated with Defendants that could even potentially have sold AVRPs to Plaintiffs — purchases AVRPs from auto parts distributors and dealerships and then resells these AVRPs to individual consumers during the vehicle repair process. Ex. E at ¶ 6 (Schuster Decl.).

Based on this factual record, Plaintiffs — as end payors in this multi-level purchasing chain — are textbook examples of indirect purchasers and lack antitrust standing under *Illinois Brick*. If the complaint is not dismissed on other grounds, the Court should consider these facts under Rule 12(d) and grant summary judgment in Defendants' favor. *See Harvard Drug Grp., LLC v. Twin City Fire Ins. Co.*, No. 11 Civ. 10066, 2011 WL 3426193, at \*2 (E.D. Mich. Aug. 5, 2011) (Battani, J.) (converting a motion to dismiss to a motion for summary judgment under Rule 12(d)); *Seven Bros. Painting, Inc. v. Painters & Allied Trades Dist. Council*, No. 09 Civ. 12506, 2011 WL 2413407, at \*3 (E.D. Mich. June 10, 2011) (Battani, J.) (converting a motion to dismiss to a motion for summary judgment under Rule 12(d)).

## IV.   Even If The Court Does Not Dismiss Plaintiffs' Individual Claims, It Should Strike Plaintiffs' Class Allegations

Under Rule 12(f), the Court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Similarly, the Court can require Plaintiffs to amend their pleading to "eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D). Indeed, the Court recognized its power to strike class allegations — and in fact did so — in the "Public Entities" direct purchaser action in the *Wire Harness* case. *In re Auto Parts Antitrust Litig.*, No. 12 Civ. 106, ECF No. 61, (E.D. Mich. Apr. 30, 2015). Similarly here, the Court should strike Plaintiffs' facially deficient class allegations because it is apparent from both the complaint and factual record that the proposed class can never be certified: Plaintiffs' claims are neither "typical" of absent class members, nor are Plaintiffs "adequate" representatives of absent class members under Rule 23(a).

"***Typicality***" is completely lacking because Plaintiffs' purchasing process in no way resembles the purchasing process of other proposed class members. As an initial matter, the Court is left to speculate about whether Plaintiffs even purchased AVRPs made by Defendants,

as opposed to AVRPs made by another company. Obviously, if Plaintiffs did not purchase AVRPs made by Defendants, they are not even members of the proposed class, much less "typical" representatives. But even if Plaintiffs did purchase AVRPs that were made by Defendants, their purchases of stand-alone AVRPs as replacement parts are not typical of other proposed class members whose claims they seek to pursue, primarily the OEMs that purchased tens of millions of AVRPs directly from Defendants as part of their vehicle manufacturing process through sophisticated RFQ processes and multi-year contracts. Plaintiffs' inability to vindicate the claims of absent direct purchaser class members is reinforced by their admission that they did not purchase these AVRPs directly from Defendants — a defense that can be uniquely raised against Plaintiffs here. *See Serrano v. Cintas Corp.*, No. 04 Civ. 40132, 2009 WL 910702, at *8 (E.D. Mich. Mar. 31, 2009) ("[W]here there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for — under those circumstances — it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." (citation omitted), *aff'd sub nom. Davis v. Cintas*, 717 F.3d 476 (6th Cir. 2013)).

"*Adequacy*" is also lacking because the proposed class definition creates serious conflicts between class members. Based on the factual record, the OEMs and their suppliers directly purchase AVRPs from Defendants. The OEMs and their suppliers subsequently sell a portion of these AVRPs as stand-alone products to their dealership franchises. These dealerships can then sell these stand-alone AVRPs to retail stores or repair shops, which in turn can sell directly to the ultimate individual consumers. Yet if the ultimate individual consumer has the good fortune of purchasing a stand-alone AVRP from a repair shop whose "ultimate parent" is a Defendant (*i.e.*, from a Firestone store), then they too are "direct purchasers" under this jerry-rigged class

definition — just like the OEMs at the very start of this sales process. Such a situation creates an irreconcilable conflict because the OEM and the individual consumer are both bringing "direct purchaser" claims for purchasing the exact same AVRP, even though the OEM was the only entity that actually purchased the AVRP directly from a Defendant. Troublingly, this situation will frequently arise. Not only does this conflict render Plaintiffs inadequate class representatives, but it also renders class counsel inadequate because it is axiomatic that counsel cannot fairly represent clients with competing interests. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) ("Because named class members must act through class counsel, adequacy of representation turns in part on 'the competency of class counsel' and in part on the absence of 'conflicts of interest.'" (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982))).

At bottom, Plaintiffs' use of such a facially unworkable class definition and proposed class exposes this complaint for what it is: nothing more than a tolling tactic until they can find better representatives — something they have failed to do for three years and 364 days. The Court should guard against these blatant litigation games. While the Court should dismiss this entire case with prejudice, at the very least it should strike these absurd class allegations.

<u>**CONCLUSION**</u>

Since Plaintiffs lack constitutional standing, this case must be dismissed with prejudice under Rule 12(b)(1). Since Plaintiffs also lack antitrust standing, they fail to state a claim under Rule 12(b)(6), and Defendants are entitled to summary judgment under Rule 12(d). Finally, the Court should strike the class allegations under Rule 12(f) and Rule 23(d)(1)(D).

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2017, I caused **DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6) AND DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(f) AND 23(d)(1)(D)** and supporting Memorandum of Law and exhibits to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

  /s/ J. Clayton Everett, Jr.
J. Clayton Everett, Jr., Esq.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Phone:  (202) 739-3000
Fax:   (202) 739-3001
clay.everett@morganlewis.com

*Attorney for Defendant DTR Industries, Inc.*